**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Makale Deng Kual-Arob, Petitioner -vs- Charles L. Ryan, et al., Respondents. | CV-17-0419-PHX-PGR (JFM) **Report & Recommendation on Petition for Writ of Habeas Corpus** |

## I.    MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 20, 2017 (Doc. 15).  On April 26, 2017 Respondents filed their Limited Answer (Docs. 20-27).   Petitioner has not filed a reply and the time to do so has expired.

The Petitioner's Petition is now ripe for consideration.    Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.    FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals described the factual background (viewed in a light most favorable to sustaining the convictions and sentences) as follows:

> ¶3    Victim L . E . is part-owner of a television repair store. Each night, L.E . would sleep at the store.

¶4    According to L.E., Arob was hired to clean the store . On occasions, L .E. would also pay Arob to wash his clothes or to buy food, but L.E. never paid Arob a salary. This arrangement continued for a few months. L.E. testified that although he never gave Arob permission to sleep at the store, one of his business partners did allow Arob to sleep at the business.

¶5    In April, 2010, L.E. asked Arob to leave the premises and Arob refused. L.E. called the police. When the police arrived they told Arob to take his belongings and leave the store. Although Arob left, he did not take his belongings with him. L.E. eventually removed Arob's belongings from the store because the police advised him to do so.

¶6    L.E. testified that later that same evening, Arob returned to the store and knocked on the door. L.E. did not answer the door because, "for me, he had no business being there." Arob continued to knock on the door for approximately one and a half hours. Eventually, L.E. went back to sleep.

¶7    Later that evening, Arob returned to the store. When L.E. woke up, Arob was standing "on" him with "his foot." L.E. could see that Arob had a knife in his pocket, as well as four cell phones in his pocket that belonged to L.E. Arob then walked out the front door of the store, and L.E. followed him down the street in an effort to get his cell phones back. After a short while Arob turned around and pulled a knife on L.E. L.E. backed up and turned to run when Arob stabbed him in the shoulder. L.E. fell to the ground and Arob got on top of him. L.E. begged Arob to "please don't kill me," and Arob got off of him. L.E. then ran away.

¶8    L.E. fled to a local convenience store and asked them to call the police. While at the store, L.E. saw Arob in the door of the store motioning for him to come outside. L.E. refused and Arob eventually left the store.

(Exhibit A, Mem. Dec. 1/15/13 at ¶¶ 3-8.)   (Exhibits to the Answer, Doc. 20, are referenced herein as "Exhibit ___.")[1]

## B.    PROCEEDINGS AT TRIAL

Petitioner was charged with aggravated assault and first degree burglary.  (Exhibit B, Information.)

The proceedings were complicated by Petitioner's language barrier, as a native of

---

[1] Respondents attach duplicate copies of all their exhibits. Exhibits A through G as part of Docket 21, and again as attachments at Dockets 21-1 through 21-7;  Exhibits H through L as part of Docket 22, and again as attachments at Dockets 22-1 through 22-5; Exhibits M through Q as part of Docket 23, and again as attachments at Dockets 23-1 through 23-5; Exhibits R through Y as part of Docket 24, and again as attachments Dockets 24-1 through 24-8; Exhibits Z through BB as part of Docket 25 an again as attachments 25-1 through 25-3; Exhibits CC parts 1 and 2 as part of Dockets 26 and 27 an again as attachments 26-1 and 27-1.  The undersigned has discerned no difference in the sets of exhibits.

2

Sudan. According to Petitioner's Opening Brief on direct appeal, a court interpreter was granted on August 31, 2010. The interpreter Anderia Arok was present at the comprehensive pretrial conference on October 10, 2010. (Exhibit G, Opening Brief at 2-3.) Repeated disputes over the interpreter ensued. At a hearing on June 10, 2011, the judge agreed that Petitioner could offer his own interpreter if he could find one. (*Id.* at 4.) According to the portions of transcripts provided, throughout the substantive trial and pretrial proceedings thereafter, when Petitioner was provided an interpreter it was Mr. Gabriel Kuany. Mr. Kuany appeared at the settlement conference on June 15, 2011 (Exhibit Y), the final trial management conference on October 4, 2011 (Exhibit AA). Other references in the record suggest that Mr. Kuany was also present at an original trial date on June 21, 2011 (Exhibit G, Opening Brief at 5), a trial management conference on July 14, 2011 (*id.*), and at Sentencing on December 8, 2011 (Exhibit I, Mot. Supplem. at 2).

Petitioner appeared on June 15, 2011 for a settlement conference. On Petitioner's request to represent himself, Counsel had previously withdrawn and Petitioner was appearing *pro se*. The prosecution offered a plea agreement with a stipulation for a sentence on the aggravated assault of 5 to 10 years, and probation on the burglary. (Exhibit Y, R.T. 6/15/11 at 14.) Petitioner declined the offer, and the settlement conference concluded. (*Id.* at 26-31.)

On October 4, 2011, Petitioner appeared with counsel for a final trial management conference. Gabriel Kuany, the court appointed Dinka interpreter was present, but Petitioner asserted (in English) he wanted to use another interpreter, named Deng Columbo, who had assisted him in another case. Because it is illustrative of the language barrier issue, the discussion is reproduced at length:

> THE DEFENDANT: I have a lot of things to say.
> THE COURT: Go ahead.
> THE DEFENDANT: I want to talk by myself. I have a lot of trouble with my lawyer, your Honor. I have a lot of trouble with my interpreter. Everything I said my interpreter is not the one I will be looking for.
> THE COURT: Sir, you're speaking English to me.

THE DEFENDANT: Yes, I am. I don't know why he brought this person.

THE COURT: Sir, you're speaking English to me and I am understanding you very well. Do you actually need an interpreter?

THE DEFENDANT: Yes, I do. I told them I don't need an interpreter.

THE COURT: Are you saying you don't need an interpreter?

THE DEFENDANT: Yes, I tell them three times.

THE COURT: Sir, listen to my question. Do you need an interpreter?

THE DEFENDANT: I don't need.

THE COURT: You do not?

THE DEFENDANT: My interpreter name Deng Columbo. That's my interpreter.

THE COURT: Okay. Mr. Columbo is not your court interpreter. This is your court-appointed interpreter. If you need an interpreter, this will be your interpreter. If you do not need an interpreter, then we can go forward without an interpreter.

THE DEFENDANT: We have interpreter. I do not listen to him. It's not my language.

THE COURT: So are you saying you do not need an interpreter and can work with Mr. Beresky without an interpreter?

THE DEFENDANT: Just wait. Don't talk. I have an interpreter named Deng Columbo. I tell my counsel. And my counsel went there and during the investigation, and I've been two year in the jail we've been doing this. And I have lawyer the name of --

THE COURT: Hang on. I'm going to relieve the court interpreter for the time while I converse with Mr. Arob about whether he has a need for an interpreter. So you do not need to interpret.

THE DEFENDANT: I don't need this person. I don't understand him.

THE COURT: That's fine. Then what you're saying is you're not going to have an interpreter.

THE DEFENDANT: I need the interpreter because I tell them long time ago my language is Dinka. This person is not the same language I speak. I don't understand him. He don't understand me. So we different tribe. I tell my lawyer my interpreter name Deng Columbo. He at the Lost Boys Center, 19 West Van Buren. This is the one I have, but the lawyer don't want to brought it.

THE COURT: Well, I'm not having any trouble understanding you when you're speaking English. Are you having any trouble understanding me?

THE DEFENDANT: Yes.

THE COURT: So you don't understand what I'm saying?

THE DEFENDANT: Sometime I don't understand you.

THE COURT: Okay.

THE DEFENDANT: Yeah, this is why I said I need an interpreter, my language Dinka, so he can understand my language. But we have trouble, because he's a different 1 tribe. I'm a different tribe. So we don't understand. I understand a little bit for him. He understand a little bit for me. Other day I went to court in different trial. I lose my case for another court, and I tell my lawyer already. So he say we going to find Deng Columbo. He went and I tell them in the investigation. He want back everything I tell him about my

4

case do I have. He's not doing it. And I've been in the jail for almost two years.

THE COURT: Stop. We need to deal with the interpreter issue first. This is the interpreter that has been appointed to you by the court.

THE DEFENDANT: Yes.

THE COURT: He's, I understand, a certified Dinka interpreter. And you're saying you don't understand him?

THE DEFENDANT: Yes, I do. I don't understand him. Whatever I said, he not get it.

THE COURT: We don't necessarily have a lot of Dinka interpreters.

THE DEFENDANT: We do. We have 19 West Van Buren. I give them the phone number. He call him at the Lost Boys Center is a community.

THE COURT: Mr. Beresky.

MR. BERESKY: Judge, I have contacted the Lost Boys Center. I've tried to get ahold of his preferred 1 interpreter. Dean Columbo is his name. He doesn't actually work there. He comes in once and a while and volunteers for them. My understanding is I don't even know if Mr. Columbo is on the approved list with the court interpretation. So I've made those efforts, but it doesn't appear Mr. Columbo, his preferred interpreter, is going to be available for trial.

THE COURT: I think that's right, Mr. Arob. You don't get to pick your own interpreter.

THE DEFENDANT: I don't pick my own interpreter. This is the one I have before, your Honor, in a case. This is my first interpreter I have in the case in a court of law here.

THE COURT: But apparently he's not available.

THE DEFENDANT: Okay. He can find another person who speak Dinka. This one I'm looking for. I just need someone to speak Dinka from Sudan.

THE COURT: All right. So you're saying you need an interpreter?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. Then you need to start interpreting again.

THE INTERPRETER: Okay. Thank you, your Honor.

THE DEFENDANT: But I don't understand him, your Honor.

THE COURT: Well, he is the Dinka interpreter. He's the one provided by the court. He's the one that will serve as your interpreter during this case.

THE DEFENDANT: See, I don't understand what he say.

THE COURT: But you understand what I say.

THE DEFENDANT: I understand what you say, yes.

THE COURT: Well, then I really question whether you actually need an interpreter, because I'm understanding you just fine.

THE DEFENDANT: I really don't need him. I need Dinka. It's not just take me to trial.

THE COURT: I understand your statement, sir. Thank you.

So, Mr. Beresky, you're ready to go to trial?

THE DEFENDANT: I know. He been talking in my ear. I tell him, ·please. I don't want to hear him.

THE COURT: Do you not want this interpreter?

THE DEFENDANT: Yeah, I want.

THE COURT: Okay. Then I'm going to relieve this interpreter. This is the interpreter that's appointed through the court. If you're not going to accept this interpreter, then you will not have an interpreter. You understand? If you don't accept the court's interpreter, you will not have an interpreter.

THE DEFENDANT: I don't understand what he's saying. I want to hear the judge say it.

THE COURT: Again, please stop. Stop interpreting.

THE INTERPRETER: Thank you.

THE COURT: Sir, this is the court-appointed interpreter . If you do not want this interpreter, you will go forward without an interpreter.

THE DEFENDANT: I need Dinka.

THE COURT: Sir, that's not the issue. This is your court-appointed interpreter who is a certified Dinka interpreter. If you don't want this interpreter, we can go forward, but you will not have an interpreter. Do you understand that?

THE DEFENDANT: Yeah, I understand that, your Honor. but I have to say one thing. How you give me the interpreter it's not my language? I'm a Dinka. I speak Dinka. I'm from Sudan. He's not. How you want to give me someone it is not from my tribe?

THE COURT: Sir, do you want this interpreter or not?

THE DEFENDANT: I need my Dinka interpreter.

THE COURT: Sir, answer the question "yes" or "no." Do you want this interpreter or not?

THE DEFENDANT: I don't need this guy.

THE COURT: You do not want this interpreter?

THE DEFENDANT: Yes.

THE COURT: Okay. Then you'll need to proceed without an interpreter.

THE DEFENDANT: All right. I'll go by myself. I don't need attorney.

THE COURT: Okay. Sir, you're going to be excused from interpreting.

THE INTERPRETER: Thank you, your Honor.

MR. LOOS: And, your Honor, can we understand that to mean for the remainder of this action?

THE COURT: Yes, because he's given up this interpreter. Are you prepared to go to trial?

MR. BERESKY: I am your Honor.

(Exhibit AA, R.T. 10/4/11 at 3-10.)

The burglary charge was dismissed on the first day of trial. (Exhibit A, Mem. Dec. 1/15/13 at ¶ 12; Exhibit C, M.E. 10/12/11.)

The jury found Petitioner guilty of aggravated assault and that it was a dangerous offense, as well as aggravating factors. (*Id.* at ¶ 13; Exhibit D, Verdict.) Petitioner was sentenced to an aggravated term of 13 years. (Exhibit E, Sentence 12/8/11.)

The court then made a series of *nunc pro tunc* modifications to the sentencing

6

minute entry. (*See* original Petition, Doc. 1 at physical page 7, *et seq*, Opening Brief at: (1) Appendix B, M.E. 12/15/11, (adding reference to two prior felony convictions); (2) Appendix C, M.E. 1/3/12 (adding "Dangerous pursuant to Ariz. Rev. Stat. § 13-703-Repetitive"); and (3) Appendix D, M.E. 1/6/12 (adding "Date of Offense: On or about 04/19/2010").)[2]

## C.    PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal.  (Exhibit F, Not. Appeal.)  Counsel was appointed, but was unable to find an issue for review, and filed an Opening Brief (Exhibit G) pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related state authorities.  The Arizona Court of Appeals ordered supplements on the date of arraignment, etc., referencing a guilty plea.  (Exhibit H, Order 10/9/12.)

Counsel then filed a Motion to Supplement the Record (Exhibit I), seeking transcripts to address whether the trial court had properly determined that Petitioner had waived or refused the services of an interpreter at trial and sentencing.  The motion was granted.  (Exhibit J, Order 5/23/12.)

Counsel then filed a Supplemental Brief (Exhibit K), conceding that Petitioner had been arraigned and that even if not arraigned, he had suffered no prejudice.

The Arizona Court of Appeals then reviewed the record "for reversible error," found none, and affirmed Petitioner's conviction and sentence. (Exhibit A, Mem. Dec. 1/15/13 at ¶¶ 2, 16.)

Petitioner did not seek further review from the Arizona Supreme Court.  (Exhibit M, Mandate 3/7/13.)

/ /

---

[2]  The copy of the Opening Brief provided by Respondents does not include the appendices.  The referenced appendices and changes are, however, referenced in the text of the copy of the Opening Brief provided by Respondents.  (*See* Exhibit G, Opening Brief at 19-20.)  Because Petitioner has not again attached the exhibits to his Amended Petition, and because it does not affect the outcome, the undersigned has resorted to referring to those attached to the original Petition.

## D.   PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner then filed with the trial court a Notice of Post-Conviction Relief (Exhibit N).  Counsel was appointed, but eventually filed a Notice of Completion of Review (Exhibit O), asserting an inability to find an issue for review and requesting leave for Petitioner to file a *pro per* PCR petition.  Counsel was ordered to remain in an advisory capacity, and Petitioner was granted leave to file a *pro per* petition.  (Exhibit P, M.E. 10/21/13.)  Petitioner failed to timely do so, and on February 28, 2014, the PCR proceeding was dismissed.  (Exhibit R, Order 2/28/14.)

Subsequently, however, the court noted that Petitioner had filed a "motion for Status Update" which the court construed as his *pro per* PCR petition.  (Exhibit S, M.E. 3/6/14.)  The court found that the petition did not meet the requirements of Arizona Rule of Criminal Procedure 32.5, rejected on the merits his claims of ineffective assistance of counsel based on the failure to provide an adequate interpreter rendering his rejection of the plea offers unknowing. (Exhibit U, M.E. 7/25/14.)

Petitioner then filed his *pro per* Petition for Review (Exhibit V) arguing ineffective assistance of counsel based on the lack of an interpreter in the correct language ("Dengangok", rather than "Dinka"[3]). The Arizona Court of Appeals reviewed

---

[3] "Dinka" is a language spoken in the Sudan, and consists of a variety of dialects. "Sudan's ethnic and linguisitic diversity is among the most complex in the world.  It's nearly 600 ethnic groups speak more than 400 languages and dialects, many of them intelligible to only a small number of individuals."  LaVerle Berry, ed., *Sudan: A Country Study*, Federal Research Division, Library of Congress, at 76 (5th ed. 2015) (available at https://www.loc.gov/item/2014043450/, last accessed 8/16/17).  "The Dinka language is divided into four dialect groups[, one of which] has 12 sub-dialects, while the three other dialects have 4-5 sub-dialects each.  The Dinka Dialects, as all other dialects in general, have grammatical, lexical and phonological differences.  The average of lexical similarity between the dialects is between 84-92%."  Helene Fatima Idris, *Modern Developments in the Dinka Langauge*, Gotebor Africana Informal Series – No. 3 at 9 (2004) (available at http://www.pol.gu.se/digitalAssets/1309/1309450_modern-developments-dinka.pdf, last accessed 8/18/17.)  One sub group of Dinka is the "Dinka Ngok." *See* Report of the Int'l Eminent Persons Group, *Slavery, Abduction and Forced Servitude in Sudan* at 37 (available at https://2001-2009.state.gov/documents/organization/11951.pdf, last accessed 8/17/17).  The undersigned has observed numerous internet references to the "Ngok" subtribe as well as the "Ngok Dinka." Especially when considering that Dinka does not utilize a settled orthography, *see* Idris, *supra* at 19 *et seq.*, there is a striking phonetic similarity between what Petitioner described as "Dengangok" and the people group "Dinka Ngok," suggesting that rather

the claim pursuant to the standards in *Strickland v. Washington*, 466 U.S. 668 (1984). The court concluded that the record supported the PCR court's findings that Petitioner had rejected an interpreter. Moreover, the court concluded that at the settlement conference Petitioner had waived counsel and was representing himself, and thus could raise no claim of ineffective assistance. (Exhibit W, Mem. Dec. 9/1/16.)

Petitioner did not seek further review. (Exhibit X, Mandate 10/19/16.)

### E. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 9, 2017 (Doc. 1). On March 20, 2017, Petitioner filed his Amended Petition (Doc. 15).[4] Petitioner's Petition asserts the following four grounds for relief:

1) ineffective assistance of trial counsel under Strickland when counsel failed to inform Petitioner of a favorable plea offer (Doc. 15 at 6);

2) the trial judge interfered in the interpretation of the sentencing hearing, denying Petitioner's right under the federal constitution to understand the proceedings;

3) Petitioner was denied due process under the Arizona Constitution when he was not arraigned as provided under the Arizona Rules of Criminal Procedure; and

4) Petitioner's sentencing was illegal because the dangerous felony designation was improperly applied.

(*See* Service Order 3/23/17, Doc. 18.)

**Response** - On April 26, 2017, Respondents filed their Limited Answer ("Answer") (Doc. 20). Respondents concede the Amended Petition is timely (*id.* at 8, *et*

---

than insisting on an individual interpreter, Petitioner may have been seeking an interpreter from a particular subgroup, the "Dinka Ngok."

[4] Petitioner simultaneously filed the same amended petition in a separate, previously dismissed habeas proceeding. The petition in that proceeding was denied without prejudice, in light of it having also been filed in this case. (*See Jual-Arob v. State of Arizona*, CV-17-0255-PHX-PGR-JFM at Docs. 6 and 9.)

*seq.*), and argue Grounds 3 and 4 are non-cognizable state law claims (*id.* at 10, *et seq.*), Ground 2 is too vague to be cognizable (*id.* at 11, *et seq.*), Grounds 1 through 4 are barred because of a procedural default (*id.* at 12, *et seq.*), and Ground 1 is without merit (*id.* at 20, *et seq.*).

**Reply** – In the Order filed June 19, 2017 (Doc. 15), the Court set a deadline of June 19, 2017 to reply. Petitioner has not replied.

## III.   APPLICATION OF LAW TO FACTS
### A.   GROUNDS THREE AND FOUR: COGNIZABLE FEDERAL CLAIMS

Respondents argue that Petitioner's claims in Grounds 3 and 4 are not cognizable federal claims, but are instead purely state law claims. (Answer, Doc. 20 at 10, *et seq.*)

**Applicable Law** - The applicable federal statutes permit habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Moreover, the rules governing habeas corpus cases require that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Rule 2(c), Rules Governing § 2254 Cases. Similarly, the standard of pleading civil complaints focuses on facts. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

But the requirement of sufficiency does not require pleading of legal theories or authorities. "Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 356, 346

(2014). "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). "The 'form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.'" *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434-45 (5th Cir. 2000) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir.1981)).

> But plaintiffs are not required to plead legal theories, even in the new world of pleading that is developing in the wake of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. Instead, the complaint must simply "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Del Marcelle v. Brwon County Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (citations omitted).

Moreover, because Petitioner is proceeding *pro se*, the Court is obligated to liberally construe his Petition. "We must construe *pro se* habeas filings liberally, and may treat the allegations of a verified complaint or petition as an affidavit." *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003). A pro se complaint, "however inartfully pleaded," is held to "less stringent standards than formal pleadings drafted by lawyers," and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

That liberal construction requires the Court to read a claim as asserting legal theories suggested by the facts alleged.

> Moreover, the liberal construction rule means that a judge should apply the relevant law regardless whether a self-represented litigant has mentioned it by name. Although a court cannot create a claim or a defense for a self-represented litigant where none exists, a judge should interpret a self-represented litigant's papers to raise the strongest arguments they suggest and to give effect to a pleading in

conformity with the general theory that it was intended to follow.
Cynthia Gray, *Reaching Out or Overreaching: Judicial Ethics and Self-Represented Litigants*, 27 J. Nat'l Ass'n Admin. L. Judiciary 97, 124-125 (2007).  "We believe that this [liberal construction] rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "Once again, we must liberally construe the pro se litigant's pleadings, and we will apply the applicable law, irrespective of whether he has mentioned it by name."  *Dluhos v. Strasberg*, 321 F.3d 365, 373 (3rd Cir. 2003).  *See Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985) (liberally construing *pro se* complaint to assert claim under 42 U.S.C. § 1985, even though only § 1983 cited).)

     "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110.

> Principles requiring generous construction of pro se complaints are not, however, without limits…It does not require those courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments.

*Beaudett v. City of Hampton*, 775 F.sd 1274, 1278 (4th Cir. 1985).

     **Ground 3** - In Ground 3, Petitioner asserts: "Violation of Due Process under Ariz. Const. Article II § 30."  His supporting facts consist of asserting: "Defendant was not arraigned under Ariz. Rules of Criminal Procedure 14.1 and 14.3." (Amended Pet., Doc. 15 at 8.)    The referenced constitutional provision states: "No person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment; no person shall be prosecuted for felony by information without having had a preliminary examination before a magistrate or having waived such preliminary examination."   The referenced rules provide for an arraignment after an indictment, information or complaint and sets various time limits and exceptions, Ariz.

R. Crim. Proc. 14.1, and provide for the notices and procedures required at arraignment, Ariz. R. Crim. Proc. 14.3.

If Ground 3 is read to be solely based on the Arizona Constitution, it would not be a cognizable ground for relief. *See* 28 U.S.C. § 2254(a). But Petitioner refers to a "Violation of Due Process." The cited portion of the Arizona Constitution contains no due process clause, a guarantee of due process being found in Article 2, § 4 of the Arizona Constitution. Thus, the legal basis suggested by Petitioner's pleading, liberally construing it to provide the strongest potential to entitle him to relief, is that his rights under the Due Process Clause of the Fourteenth Amendment to Federal Constitution were denied by the lack of the arraignment required by Arizona law.

Indeed, an error of state law may be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *Pully v. Harris*, 465 U.S. 37, 41 (1984). To sustain such a due process claim founded on state law error, a habeas petitioner must show that the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)). To receive review of what otherwise amounts to nothing more than an error of state law, a petitioner must argue "not that it is wrong, but that it is so wrong, so surprising, that the error violates principles of due process"; that a state court's decision was "such a gross abuse of discretion" that it was unconstitutional. *Brooks v. Zimmerman*, 712 F.Supp. 496, 498 (W.D.Pa.1989).

Petitioner might ultimately fail to establish the necessary underlying facts that the state law errors in his case rose to that level, or even that any errors occurred. But that does not alter the fundamental nature of the claim that (liberally construed) his Petition raises, namely that errors occurred which did amount to a denial of due process under the Federal Constitution.

**Ground 4** – In his Ground 4, Petitioner argues an "Illegal Sentencing," and alleges that he "was sentenced as a dangerous felony using Ariz. Rev. Stat. § 13-604

13

which does not apply." He explains: "This statute is concerning a Class 6 designation and cannot be used to make his conviction dangerous." (Amended Petition, doc. 15 at 9.)

Respondents argue that this is a purely state law claim, but also observe that habeas relief may be granted "if the state court proceedings violated due process or notions of 'fundamental fairness,'" citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). (Answer, Doc. 20 at 11.) Respondents go on to argue that Petitioner offers no argument that the state court's actions rendered his state court proceedings fundamentally unfair.

In other contexts, by reading Petitioner's bare allegations as raising a due process claim, the Court might be straying from a liberal construction to "constructing full blown claims from sentence fragments," *Beaudett*, 775 F.2d at 1278. However, in the context of a federal habeas petition by a state prisoner, allegations of a state law violation in a criminal prosecution suggest a due process violation because that is the only cognizable basis for relief under the facts alleged. The due process implications of an unauthorized sentence have long been recognized. *See e.g. Townsend v. Burke*, 334 U.S. 736, 741 (1948). That Petitioner does not go the added step of uttering "due process" or "fundamentally unfair" does not, in this context, hide the plain basis for habeas relief raised by the allegations he does make.

**B.      GROUND TWO: VAGUENESS**

Respondents argue that Ground 2 is so vague that it does not state a cognizable ground for relief. (Answer, Doc. 20 at 11, *et seq*.)

In Ground 2, Petitioner argues "Judicial Misconduct," and alleges: "The judge excused the court appointed interpreter during aggravation phase, and acted as an expert witness about the compatability [sic] of 2 different dialects of the defendants [sic] native language and in so doing denied the defendant of being able to understand the proceedings he was going through which is a right protected by the U.S. Constitution." (Amended Petition, Doc. 15 at 7.)

Respondents point to the mandate of Rule 2, Rules Governing Section 2254 Cases, and cite *Mayle v. Felix*, 545 U.S. 644, 656 (2005) for the proposition that the Rule "demand[s] that habeas petitioners plead with particularity." (Answer, Doc. 20 at 12.) On that basis, they argue that Petitioner's "vague reference to violations of the U.S. Constitution with respect to this claim, without identifying a specific federal constitutional guarantee that he believes was violated, does not fulfill this requirement." (*Id.*)

However, Rule 2 and *Mayle* dealt with the factual particularity of a petition, not the particularity in asserting the legal basis. Rule 2(c) requires that, in pertinent part, that a habeas petition: "specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground." No requirement is made for stating the legal theory supporting each ground. The reference to providing "all the grounds" is not directed at ensuring sufficient briefing, but to clarify that "all available grounds for relief be presented in the petition, including those grounds of which, by the exercise of reasonable diligence, the petitioner should be aware." Rules Governing Section 2254 Cases, Rule 2, Advisory Committee Notes to 1976 Adoption. Thus the admonition pertains to the inclusion of all available grounds, and not to the specificity with which the ground is laid out.

Similarly in *Mayle*, the Court focused on the factual allegations of a habeas petition in applying the relation back of amended pleadings under Federal Rule of Civil Procedure 15(c). The Court referenced Rule 2(c) and mandated, not that the same legal theories be applied in amended petitions, but that they present "claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664.

Indeed, *Mayle* relied upon the Court's earlier decision in *Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574, 580–581 (1945). The Court described the case:

> In *Tiller*, a railroad worker was struck and killed by a railroad car. His widow sued under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., to recover for his wrongful death. She initially alleged various negligent acts. In an amended complaint, she added a claim under the Federal Boiler Inspection Act for

> failure to provide the train's locomotive with a rear light. We held that the amendment related back, and therefore avoided a statute of limitations bar, even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted.

*Mayle*, 545 U.S. at 659. The Court in *Tiller* held that the new legal theory of liability related back because "[t]here was but one episode-in-suit." *Id.* at 660. Thus, it was the factual allegations, not the legal theories, which were pertinent in the pleading in *Tiller*, and the habeas petition in *Mayle*.[5]

In Ground 2, Petitioner amply identifies his facts (judicial misconduct in the form of a denial of a competent interpreter at his sentencing hearing), but fails to state his legal theory or authority. Rule 2(c) does not mandate those be explicit.

Moreover, because Petitioner is *pro se*, the Court is required to liberally construe Ground 2 to include the legal theories suggested by the facts with the strongest likelihood of entitling Petitioner to relief. Here, the constitutional theories suggested by the denial of an interpreter in a criminal trial include violations of rights of due process, confrontation, and effective assistance of counsel. *See* Thomas M. Fleming, J.D., *Right of Accused to Have Evidence or Court Proceedings Interpreted*, 32 A.L.R.5[th] 149 at §§ 4-5 (1995).

Accordingly, Petitioner's Ground 2 adequately states a claim for relief.

## C.    <u>EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR</u>

Respondents argue that all of Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

//

//

---

[5] That is not to suggest, however, that a state habeas petitioner can meet his obligations to exhaust his state remedies on a federal claim by fairly presenting them to the state court, without clearly stating his legal theory. As discussed hereinafter in Section III(C), the contrary is true.

**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

**a. Exhaustion by Fair Presentation**

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts. "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his

federal claim to the state courts as part of the same claim. A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts. Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983). And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366 (1995). While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*). "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).[6]

**Proper Mode** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

## b.  Exhaustion by Actual Consideration

Although fair presentation is the normal mode of establishing exhaustion of state remedies, it is not the only method.  Rather, a petitioner's state remedies are exhausted where the state courts have reached and passed on the merits of a federal claim, regardless whether the petitioner had fairly presented the claim to the state court. "It is reasonable to infer an exception [to the fair presentation requirement] where the State has actually passed upon the claim." *Castille v. Peoples*, 489 U.S. 346, 351  (1989). *See Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002) ("exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the highest state court"); *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *and Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

On the other hand, actual consideration of the claim is not required.  "All

---

[6] This requirement for specifying a federal legal theory is very different from the standard, discussed hereinabove in Sections III(A) and (B), applicable to determining whether *pro se* federal habeas petitions adequately state a federal claim.

exhaustion requires is that the state courts have the opportunity to remedy an error, not that they actually took advantage of the opportunity." *Scott v. Schriro*, 567 F.3d 573, 583 (9th Cir. 2009).

## 2. Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts. Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P. 32.4. (Answer, Doc. 20 at 19.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz.R.Crim.P. 32.2(a)(3). Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002)

(quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*. That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071. Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R.

Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor does it appears that such exceptions would apply. The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Moreover, such exception only applies to evidence that would have change the verdict or sentence. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims

Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3. Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**Waiver Bar** - Petitioner fails to proffer anything to suggest that Rule 32.2(a) is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal. The federal courts have routinely held that it is. "Arizona's waiver rules are independent and adequate bases for denying relief." *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.) *cert. denied*, 135 S. Ct. 710 (2014). *See also Stewart v. Smith*, 536 U.S. 856, 861 (2002) (Arizona's waiver rule is independent of federal law); and *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (adequate because consistently and regularly applied).

**Timeliness Bar** – Similarly, Petitioner fails to proffer anything to suggest that Rule 32.4 is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal. The district courts in Arizona have held that it is. *See e.g. Morgal v. Ryan*, 2013 WL 655122, at *16 (D. Ariz. Jan. 18, 2013) *report and recommendation adopted*, 2013 WL 645960 (D. Ariz. Feb. 21, 2013).

## 4. Application to Petitioner's Claims

### a. No Exhaustion of Claims on Direct Appeal

Petitioner presented no claims on direct appeal. Counsel filed an *Anders* Opening Brief (Exhibit G), and a Supplemental Brief (Exhibit K) conceding no denial of an arraignment or alternatively conceding no prejudice from such a denial. The Arizona Court of Appeals addressed no claims *sua sponte*. (*See* Exhibit A, Mem. Dec. 1/15/13.) Accordingly no proper exhaustion of state remedies transpired in Petitioner's direct appeal.

Accordingly, if Petitioner's state remedies were properly exhausted it must have occurred in the review of his PCR proceeding.

### b. Ground One

In Ground One of his Petition, Petitioner argues that counsel was ineffective in failing to inform Petitioner of a 6.5 year plea offer. (Amend. Petition, Doc. 15 at 6.) Petitioner alleges that he raised this claim to the Arizona Court of Appeals in his "First Petition" and "Second Petition." (*Id.*)

Respondents argue that while Petitioner presented a claim of ineffective assistance in his Petition for Review in his PCR proceeding, that was limited to ineffectiveness based on the denial of a competent interpreter. (Answer, Doc. 20 at 16.)

Indeed, Petitioner's claim in his Petition for Review (Exhibit V) centered around his assertions that counsel allowed him to be given a "Dinka" interpreter rather than a

"Dengangok" interpreter. His only reference to a plea offer was that "the Defendant could not understanding [sic] documents from court and/or plea agreement offered." (*Id.* at 2.) That is the claim the Arizona Court of Appeals addressed. (Exhibit W, Mem. Dec. 9/1/16.)

His claim here is not that he could not understand the plea agreements of which he was aware, but that there was another plea agreement providing for a sentence of 6.5 years. Ineffective assistance claims are not fungible, but must each be specifically argued to the state court. *See Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982) (presentation of "additional facts of attorney incompetence" transformed claim into one not presented to state court); and *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (rejecting argument that presentation of any claim of ineffectiveness results in fair presentation of all claims of ineffective assistance).

Because Petitioner did not fairly present, and the Arizona Court of Appeals did not decide, a claim of ineffectiveness based on the failure to inform him of a plea offer of 6.5 years, Petitioner has not properly exhausted his state remedies on the claim in Ground 1.

For the reasons discussed hereinabove in Section III(C)(2), the undersigned concludes that Petitioner has procedurally defaulted his state remedies on his claims in Ground 1. The undersigned notes that Petitioner has not previously asserted the facts underlying his Ground 1. Although Ariz. R. Crim. Proc. 32.1(e) provides an exception to Arizona's procedural bars for claims based on newly discovered evidence, but that only applies when the evidence would have changed the verdict or sentence. Information on an undisclosed plea offer would not impact either the verdict or sentence, but would pertain only to a potential violation of Petitioner's rights to counsel.

### c. Ground Two: Judicial Misconduct/Interpreter

Respondents argue that Ground 2 was not fairly presented to the state courts. In Ground 2, Petitioner argues that the trial court denied him a competent interpreter. The

undersigned, hereinabove, has liberally construed this ground as asserting claims based on due process, confrontation rights, or the right to counsel.

In his Petition for Review to the Arizona Court of Appeals (Exhibit V), Petitioner argued that he suffered ineffective assistance of counsel because counsel failed to pursue a competent interpreter. Although Petitioner did not clarify that he was asserting a federal claim of ineffective assistance, the Arizona Court of Appeals addressed the merits of this claim under federal law, citing *Strickland*, the landmark federal case on ineffective assistance of counsel. (Exhibit W, Mem. Dec. 9/1/16 at ¶¶ 5-6.)

Here, however, Petitioner's claim is not that counsel's conduct resulted in some constitutional violation that justifies habeas relief, but that the judge's "misconduct" did so. Petitioner did not present to the Arizona Court of Appeals, and that court did not decide, a claim that the judge had engaged in misconduct on this issue. "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

Neither did Petitioner present any argument that the judge denied his federal rights to due process, confrontation, or counsel.

Because Petitioner did not fairly present, and the Arizona Court of Appeals did not decide such a claim, Petitioner has not properly exhausted his state remedies on the claim in Ground 2. For the reasons discussed hereinabove in Section III(C)(2), the undersigned concludes that Petitioner has procedurally defaulted his state remedies on his claims in Ground 2.

### d. Ground Three: Due Process re Arraignment

Respondents also argue that Ground 3 was not fairly presented and is procedurally defaulted. Liberally construed, in Ground 3, Petitioner argues that he was denied his federal right to due process when the state failed to arraign him. (*See infra* Section

III(A).)

Petitioner did not raise such a claim in his Petition for Review (Exhibit V), nor did the Arizona Court of Appeals consider it (Exhibit W, Mem. Dec. 9/1/16). Accordingly, Petitioner's state remedies were not properly exhausted in his PCR proceeding.

On direct appeal, in the course of conducting its review of the record pursuant to *Anders*, the Arizona Court of Appeals raised the question whether Petitioner was arraigned, citing *Penson v. Ohio*, 488 U.S. 75 (1988). In *Penson,* the Court held that when counsel has filed an *Anders* brief, before permitting withdrawal, the Court must first examine the record to determine whether there are nonfrivolous issues counsel should have raised. If the Court finds such it must prior to decision direct counsel to brief the issues. *Id.* at 83. However, the state court ultimately did not address the issue on the merits because counsel's brief argued that in fact Petitioner had been arraigned, and that even if he hadn't he had no nonfrivolous basis to assert prejudice from the lack of an arraignment. (*See* Exhibit K, Supp. Brief.) *See State v. Vassar*, 111 Ariz. 487, 489, 533 P.2d 544, 546 (1975) (actual prejudice required for relief based on failure to conduct timely arraignment). Thus, rather than raising such a claim, counsel admitted such a claim did not exist. Therefore, the Arizona Court of Appeals did not reach the merits of any claim based on the lack of an arraignment.

Moreover, there was no suggestion in the appellate court's briefing order or in counsel's Supplemental Brief, that the lack of arraignment would constitute a denial of a federal right of due process. It is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson*, 459 U.S. at 6.

Because Petitioner did not fairly present, and the Arizona Court of Appeals did not decide the federal claim in Ground 3, Petitioner has not properly exhausted his state remedies on the claim in Ground 3. For the reasons discussed hereinabove in Section III(C)(2), the undersigned concludes that Petitioner has procedurally defaulted his state

remedies on his claims in Ground 3.

### e.   Ground Four: Illegal Sentence

Respondents also argue that Ground 4 was not fairly presented and is procedurally defaulted.  Liberally construed, in Ground 4, Petitioner argues that he was denied his federal right to due process when he was sentenced to a sentence not authorized by state law.  (*See infra* Section III(A).)

Petitioner did not raise such a claim in his Petition for Review (Exhibit V), nor did the Arizona Court of Appeals consider it (Exhibit W, Mem. Dec. 9/1/16).  Accordingly, Petitioner's state remedies were not properly exhausted in his PCR proceeding.  Because Petitioner did not fairly present, and the Arizona Court of Appeals did not decide the federal claim in Ground 4, Petitioner has not properly exhausted his state remedies on the claim in Ground 4.  For the reasons discussed hereinabove in Section III(C)(2), the undersigned concludes that Petitioner has procedurally defaulted his state remedies on his claims in Ground 4.

### f.   Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on all of his claims.

### 5. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v.*

*Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner has not filed a reply to respond to Respondents' procedural default arguments or to assert cause and prejudice. The only assertion of cause he makes in his Petition is with regard to Ground 4. There Petitioner argues "I was unaware of what this [sentencing] statute was until recently."

The "cause and prejudice" standard is equally applicable to *pro se* litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at 1381; illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking. *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989). Thus, the mere fact that Petitioner was until recently ignorant of the law does not establish valid cause to excuse his procedural default.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991). Petitioner has filed to establish cause for his procedural default. Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 6. Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id*. at 329. This standard is referred to as the "*Schlup* gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Moreover, to pass through the *Schlup* gateway, not just any evidence of innocence will do; the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner's Petition makes no assertion of actual innocence.

### 7. Summary re Exhaustion

Based on the foregoing, Petitioner has procedurally defaulted his state remedies on all his grounds for relief, and fails to show cause or actual innocence to excuse that

procedural default.  Accordingly, his grounds for relief and the Amended Petition must be dismissed with prejudice.

### D.  MERITS OF GROUND ONE: INEFFECTIVE ASSISTANCE

Respondents argues that to the extent that Ground 1 is based on a claim of ineffective assistance resulting from counsel's failure to provide a competent interpreter, relief on such a claim is not available under the limitations in 28 U.S.C. § 2254 on habeas relief to state convicts.  (Answer, Doc. 20 at 20, *et seq.*)

It is true that Ground 2 of Petitioner's original Petition argued ineffective assistance on the basis of failure to provide a competent interpreter.  (Doc. 1 at "7", physical page 127.)  But Petitioner did not include that claim in the current Amended Petition (Doc. 15).  "It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent." *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956), overruled on other grounds by *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).  Moreover, Petitioner raised no objection when the Court in the service and response order construed Ground One as asserting a claim of "ineffective assistance of trial counsel under Strickland when counsel failed to inform Petitioner of a favorable plea offer." (Order 3/23/17, Doc. 18 at 1.)

Petitioner makes no reference to the lack of an interpreter in his current Ground 1, but in his alleged facts focuses solely on the failure to disclose a plea offer of 6.5 years. (Amended Petition, Doc. 15 at 6.)  The undersigned finds in the facts alleged in Ground 1 no basis to construe the claim to be based on counsel's performance with regard to an interpreter, and has herein again so construed that Ground.  (*See infra*, Section III(A).)

Moreover, the undersigned concludes hereinabove that Ground 1, as so construed, must be dismissed as procedurally defaulted.

Accordingly, the merits of Ground 1 are not reached.

//

//

# IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.   The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.   Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.   Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of

appealability should be denied.

## V.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Amended Petition for Writ of Habeas Corpus, filed March 20, 2017 (Doc.  15) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.    EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: August 22, 2017

James F. Metcalf
United States Magistrate Judge